UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ADE BROWN,

        Plaintiff,                   Case No. 1:18-cv-812

v.                                       Honorable Paul L. Maloney

SABRINA DAVIS et al.,

        Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington and the unknown MDOC Director of Mental Health (Unknown Party #1). The Court will serve the complaint against Defendants Davis, Christiansen, Maranka, Davids, Sandburn, Miniard, Barber, Schiebner, and Smith.

# Discussion

## I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and, MDOC Director of Mental Health (Unknown Party #1), together with the following current or former officials at ICF: Former Warden Willie Smith; Warden John Davids; former Deputy Warden (unknown) Schiebner; Deputy Wardens (unknown) Sandborn and Gary Miniard; Inspector (unknown) Barber; Assistant Warden John Christiansen; Psychologist David Maranka; and Resident Unit Manager (RUM) Sabrina Davis.

Plaintiff alleges that, between his arrival at ICF on March 18, 2016 and, August 2017, he was confined to administrative segregation and housed mostly in Unit 1, A Wing. Plaintiff alleges that he was denied the ability to transfer to B Wing, which was the favored wing in Unit 1. In A Wing, all windows were kept shut, while in B Wing, most windows would open. Nevertheless, throughout Unit 1, the heat and cooling ventilation system worked properly, and Plaintiff alleges that he was never exposed to extreme temperatures.

Plaintiff was moved to the other administrative segregation unit, Unit 2, in July or August of 2017. In Unit 2, the windows were kept closed, and the air vents (which are supposed to provide heat and fresh air) did not work properly. As a result, the unit became freezing cold in the winter and excessively hot in the summer. In addition, the ventilation system is so noisy that it caused ear pain, hearing loss, and mental destabilization to mentally ill prisoners such as

Plaintiff. Further, the noise prevented Plaintiff from sleeping and from having even minimal communication with other prisoners. Plaintiff became extremely depressed.

Plaintiff was supposedly released to general population in October 2017, and he was sent to Unit 4. He was moved to Unit 5 in January 2018. Currently, Plaintiff is in Unit 3. None of the three units has a properly working ventilation system, resulting in extreme cold in the winter and extreme heat in the summer, throughout every unit except Unit 1.

In April 2018, Defendant Christiansen began to seal shut every window at ICF, despite knowing about the ventilation problems. Numerous prisoners have complained, including Plaintiff, but the process of sealing the windows has continued. Plaintiff alleges that the extreme heat in the unit interferes with his breathing, leaves him unable to move or sleep, causes him severe headaches, and exacerbates his depression. Plaintiff asserts that the ventilation conditions are exacerbated by the fact that Level-V prisoners must remain in their cells 23 to 24 hours per day. He also alleges that, because of the solid cell doors and walls, no air circulation occurs without a working ventilation system.

Plaintiff also contends that correctional officers use large fans in the unit to torture prisoners, creating loud and constant noise without benefit to the prisoners, since no breezes can enter the solid cell doors. Plaintiff contends that the fans deafen the prisoners and prevent them from communicating with one another. Plaintiff alleges that the fans should only be used when necessary to dry the floors or cool the halls, but officers have refused to turn off the fans for six months. Prisoners, including Plaintiff, have complained repeatedly to the ICF Defendants, including Davis, but all have refused to change the practice.

Plaintiff argues that Defendant Davis was the only RUM in the facility and was aware of the conditions in all units, but she not only failed to protect Plaintiff from those conditions

(and refused to turn off the fans), she made the conditions worse by taking away the incentive program in the rehabilitation unit. Under the Start Program implemented by the MDOC in 2012, prison officials were mandated to provide incentives to segregation prisoners, including access to journaling, telephones, store purchase of food, access to J-Pay and SecurePak, and jobs. Together with Defendants Miniard, Davids, and Maranka, Davis told Plaintiff that the unit prisoners were now considered general population prisoners, and she eliminated the Start Program and its privileges. She technically reassigned Plaintiff and other prisoners to general population, but denied the mentally ill prisoners access to the privileges of other general population prisoners. Plaintiff contends that Davis, in conjunction with Miniard, Davids, and Maranka violated the MDOC requirement that all segregation prisoners have access to the Start Program. He also alleges that he is being deprived of his right to equal protection, because he and other mentally ill prisoners are not being treated either like other segregation prisoners or general population prisoners. He also alleges that Smith, Christiansen, and Schiebner began the practice of denying segregation prisoners basic hygiene items, such as deodorant, toothbrushes, toothpaste, and shampoo, despite the fact that he cannot buy the items and the items are available in the supply room. He contends that Davids, Davis, and Miniard continue the practice. Plaintiff acknowledges, however, that he is provided with two rolls of toilet paper and two bars of soap.

   Plaintiff alleges that he complained to Defendants Smith, Christiansen, Schiebner, Miniard, Maranka, Davids, Davis, and Barber repeatedly, both in person and in writing, but no changes were made to the ventilation system or the use of loud fans. Plaintiff contends that Defendant Maranka had a duty under state law to prevent segregation conditions from harming mentally ill prisoners. Plaintiff alleges that Defendant Washington is responsible for overseeing conditions and therefore must have authorized the horrendous conditions at ICF.

Plaintiff contends that the various allegations constitute violations of his Eight Amendment protection against cruel and unusual punishment. He also contends that Defendants, by preventing conversation and denying phone privileges, are denying him his First Amendment right to freedom of speech. In addition, he contends that his treatment in the rehabilitation unit has been turned into a segregation unit for all intents and purposes and that he is being denied equal protection in relation to other prisoners because of his mental illness.

Plaintiff seeks to have his lawsuit designated a class action. He seeks a variety of injunctive relief, together with compensatory and punitive damages.

## II. Class Action

Plaintiff seeks to have his complaint treated as a class action, which the Court construes as a request for class certification. For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation. *See* Fed. R. Civ. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000). Because Plaintiff is an incarcerated *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Therefore, the Court will deny Plaintiff's request for class certification.

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### IV. Defendants Washington and Unknown Party #1

Plaintiff fails to make specific factual allegations against Defendants Washington and the MDOC Director of Mental Health (Unknown Party #1), other than his claim that they failed to supervise their subordinates and thereby failed to protect Plaintiff from the actions of other Defendants. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Washington and Unknown Party #1 engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## V. Remaining Defendants

Upon initial review, the Court concludes that Plaintiff has stated at least one claim against each of the other Defendants. The Court therefore will order service on Defendants Davis, Christiansen, Maranka, Davids, Sandburn, Miniard, Barber, Schiebner, and Smith.

## VI. Pending Motion

Plaintiff has filed a motion to appoint counsel. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989). Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 3) is therefore **DENIED**.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington and Unknown Party #1 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Davis, Christiansen, Maranka, Davids,

Sandburn, Miniard, Barber, Schiebner, and Smith.  The Court will deny Plaintiff's motion (ECF No. 3) to appoint counsel.

An Order consistent with this Opinion will be entered.


Dated:   August 17, 2018                              /s/ Paul L. Maloney
                                                     Paul L. Maloney
                                                     United States District Judge