UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| ADE BROWN, # 884273, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:18-cv-812 |
| v. | ) |
| | ) Honorable Paul L. Maloney |
| SABRINA DAVIS, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**REPORT AND RECOMMENDATION**

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. This lawsuit arises out of conditions of plaintiff's confinement at the Ionia Correctional Facility. The defendants are Resident Unit Manager Sabrina Davis, Assistant Warden John Christiansen, Unit Chief Psychiatrist David Maranka, Warden John Davids, Deputy Warden Lynn Sandborn, Deputy Warden Gary Miniard, Inspector Steve Barber, Deputy Warden James Scheibner, and former Warden Willie Smith.

Plaintiff alleges that defendants: (1) violated his Eighth Amendment rights by housing him in cells that failed to maintain a comfortable temperature, include quiet vents providing adequate air circulation, and unsealed windows that he could open; (2) violated his First Amendment rights because large fans kept him from communicating with other inmates and violated his Eighth Amendment rights because the noise caused him to experience headaches, lose sleep, and become

depressed; (3) violated his Eighth Amendment rights during his confinement in Unit Three by not providing him with free toothpaste, shampoo, and deodorant; and (4) violated his rights under the Fourteenth Amendment's Equal Protection Clause by eliminating a "START" incentive program or changing program rules, which resulted in plaintiff having fewer privileges than ICF inmates without mental health issues.[1]

The matter is before the Court on defendants' motion for partial summary judgment based on the affirmative defense of failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a). (ECF No. 20).[2] Plaintiff opposes the motion. (ECF No. 24). For the reasons set forth herein, I recommend that the Court grant defendants' motion for partial summary judgment in part and deny it part. The Court should grant defendants' motion on plaintiff's claims under the Fourteenth Amendment's Equal Protection Clause based on elimination of the START program and deny defendants' motion on all other claims.

## **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016). The standard for determining whether summary judgment is

---

[1] All other claims have been dismissed. (ECF No. 5, 6).
[2] Defendants are not seeking summary judgment on plaintiff's claims "arising from the alleged sealing of the windows in his unit or the running of the fans." (Defs Br. at 14, ECF No. 21, PageID.86).

appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. *See Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see AES-Apex Employer Servs., Inc. v. Rotondo*, 924 F.3d 857, 866 (6th Cir. 2019) ("[C]asting

only [a] 'metaphysical doubt' is insufficient to survive summary judgment.") (quoting *Matsushita*, 475 U.S. at 586). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].' " *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252)); *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "[W]here the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation and quotation omitted). In other words, the movant with the burden of proof " 'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.' " *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Standards Applicable to the Affirmative Defense
## of Failure to Exhaust Remedies

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 "or any other Federal law" must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address

only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[3] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

---

[3]A copy of the policy directive is found in the record. (*See* ECF No. 21-3, PageID.250-56).

The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## **Relevant Facts**

Plaintiff was an inmate held in the custody of the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) during the period at issue.[4] (Compl., 3, ECF No. 1, PageID.3).

Plaintiff filed a number of grievances, and he pursued some of them through a Step III decision before he filed this lawsuit. (ECF No. 21-2, PageID.89-248). Two

---

[4] Plaintiff's complaint is verified under penalty of perjury and is considered as his affidavit in opposition to defendants' motion for partial summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). But plaintiff's complaint does not include factual allegations regarding exhaustion of his claims against each defendant. The verification at the end of plaintiff's brief (Plf. Brief, 10, ECF No. 24, PageID.352) did not convert it into an affidavit. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("Arguments in parties' briefs are not evidence.").

grievances are related to plaintiff's claims; accordingly, they warrant further discussion.

1. Grievance No. ICF-2018-03-0315-28A

On March 13, 2018, ICF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. ICF-2018-03-0315-28A. (ECF No. 21-2, PageID.118). The grievance is set forth verbatim below:

> On 3-5-18 C/O Fraker and Eurochers work 3rd shift 10pm-6am. Eurocher came and turned the fans on, which kept inmates up all night, created a hostile environment, and made it very cold. All the cold air circulated freezing inmates. I asked her to turn them off and she wouldn't. And I asked Fracker. Lt. Steward came around like 3 or 4 am or something. I told her I can't sleep, and its cold and they won't turn fans off and she said nobody wants to hear your mouth. So fans are being used to silence inmates, keep us from talking, and freeze us. This been going on all winter, and Warden Smith or Deputy Christiansun or Rum Davis have protected inmates from this abuse condoning it. Pd violation 03.03.130, says we are suppose to be treated humane, with dignity, free from retaliation, psychological and corporal punishment. I was cold depressed, and humiliated all night. Fans didn't go off until the next day by C/O Burns around 8am.

(*Id.*). This grievance was rejected for being duplicative of Grievance Nos. ICF-2018-01-91-28z and ICF-2018-01-96-27z, and the rejection was upheld through the Step III appeal. (*Id.* at PageID.115-19; *see also* ECF No. 21-2, PageID.157-67).

2. Grievance No. ICF-2018-04-540-27z

On April 23, 2018, ICF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. ICF-2018-04-540-27z. (ECF No. 21-2, PageID.113). The grievance is set forth verbatim below:

> Windows in the segregation units in i-max has been sealed in 1-unit A-wing for years and years. B-wing windows in 1-unit open. But all for except 3 windows open in A-wing. In 2-unit segregation all windows

> open. Warden Willie Smith, who recently retired, and A/Warden John Christiansun, rum Davis, and other higher-ups are not doing anything to ensure our windows are open. J. Christiansun is the new warden and he ordered the whole maintenance to seal all windows in seg shut. Maintenance is sealing the windows now. This month of April. He just became the active warden and he's already oppressing inmates. Pd 03.03.130 states we must have humane treatment, this is inhumane, we r locked in a cell for 24 hours a day, oxygen and fresh air is a necessity, especially to the mental ill prisoners in Ad-seg laydown, not able to breathe fresh and proper air constitutes cruel and unusual punishment. Can Warden Christiansun show me a policy were Lansing said to seal all windows shut or a memorandum? Maintenance crew are also held responsible and Health-Care, because this can hurt mental ill prisoners, so Maranka, J. Bunting, Dozeman and other health care is involved.

(*Id.*). This grievance was rejected at Step I as raising a non-grievable issue and the rejection was upheld on that basis at Steps II and III. (*Id.* at PageID.110-14).

    3.    <u>Modified Access</u>

It is undisputed that plaintiff was on modified access to the grievance system from May 30, 2018, through October 26, 2018.[5] An inmate on modified access submits requests for grievance forms to the grievance coordinator, who reviews the request to determine whether it complies with institutional rules regarding the filing of grievances. Plaintiff states that he asked ICF's grievance coordinator for grievance forms as indicated below, and that he never received responses.

---

[5] *See* Defs Br. at 4, PageID.76; Pltf Br. at 2, PageID.344.

On June 14, 2018, plaintiff sent a kite (informal complaint) asking the grievance coordinator for five grievance forms.[6] Two of these requests were related to claims in this lawsuit. (ECF No. 24-1, PageID.355-56). Plaintiff complained that he was not receiving his rights and privileges under the START program. Further, he complained that as of June 13, 2018, there were "no cooling or heating systems in 2-unit" or in his cell in ICF's Unit Three, and that his cell's windows were sealed shut. (*Id.* at PageID.356).

On July 2, 2018, plaintiff asked the grievance coordinator for a grievance form to complain about the lack of free hygiene supplies during his confinement in ICF's Unit Three. (ECF No. 24-1, PageID.361-62). Plaintiff sent another kite on the same date asking why he had not received a response from the grievance coordinator regarding his earlier kites. (*Id.* at PageID.359-60).

On July 5, 2018, plaintiff sent a kite to the grievance coordinator:

> I have tried to resolve this issue with RUM Davis, Warden Davids, Maranka, Miniard. I talked to RUM Davis various times in June and sent kites [to] her & warden.
>
> I want to grieve my prison conditions in the Start program [a]s inhumane. I want to say that RUM Davis, Deputy Miniard, and Warden Davids [are] holding me in a start program which is gp [general population] under ad-seg [administrative segregation] conditions. It [has] made it much harder to rehabilitate and because of these

---

[6] In response to defendants' attorney's inquiry whether plaintiff would oppose defendants' motion for partial summary judgment, plaintiff sent materials to defendants' attorney and indicated that "all [his] grievances on everything" were enclosed. (Def. Brief, 4, PageID.76). Plaintiff concedes that his June 14 and July 2, 2018, kites were not included in those materials. (Plf. Brief, 3-4, PageID.345-46). Defendants did not file a reply brief. Thus, defendants have not provided the Court with any argument addressing these kites or reasons why they should be excluded from consideration.

> conditions my mental illness gets worse. I should be able to order secure packs, my tv, all electronics and everything. As a gp start prisoner, the rules of this program [are] not right because I'm being denied all the things I [am] suppose[d] to have.

(ECF No. 21-4, PageID.288-89).

On July 20, 2018, plaintiff filed this lawsuit. (ECF No. 1). On July 26, 2018, plaintiff signed an affidavit, apparently directed to ICF's grievance coordinator, and among other things, complained that the START program rules were discriminatory. (ECF No. 21-4, PageID.265).

## Discussion

Defendants do not contest exhaustion on plaintiff's First and Eighth Amendment claims based on the running of fans and his Eighth Amendment claims based on the sealing of his cell's windows. (Def. Brief, 14, PageID.86).

A.  START Program

Defendants argue that plaintiff failed to properly exhaust his equal protection claims regarding the START program. (Def. Brief, 11-13, PageID.83-85). "Defendants do not dispute that [plaintiff] followed the available procedure for exhaustion by submitting [] kites to the grievance coordinator while [he was on] modified access."[7] (*Id.* at 12, PageID.84). Defendants "maintain that neither the

---

[7] Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446-47 (6th Cir. 2005). The inmate may still submit requests for grievance forms to the grievance coordinator, who reviews the request to determine whether it complies with institutional rules regarding the filing of grievances. If a plaintiff is refused a grievance form for a non-frivolous grievance, his remedies will be deemed unavailable, and he therefore will not be obligated to exhaust them. *Id.*

July 5 kite nor the July 26, 2018 affidavit demonstrate proper exhaustion of the claims at issue here."[8] (*Id.*). In addition, defendants argue that if the Court finds the July 5, 2018, kite "sufficiently analogous" to a claim that survived initial screening, it should not be an equal protection claim, because the kite did not "address any equal protection concern[.]" (*Id.*). It should not be a claim based on elimination of the START program, because plaintiff's kite "concerned conditions of the START program," not its termination. (*Id.*).

Only the latter argument has merit. Plaintiff's kites regarding the START program (ECF No. 21-4, PageID.288-89; ECF No. 24-1, PageID.356) contain sufficient complaints regarding of unequal treatment of plaintiff as a participant in the START program to exhaust claims rooted in the Fourteenth Amendment's Equal Protection Clause. Defendants are correct, however, that plaintiff's kites did not address termination of the START program. I find that plaintiff did not properly exhaust any claim based on elimination of the START program.

B.  <u>Transfers Between ICF's Housing Units</u>

Defendants' brief includes the following argument regarding plaintiff's transfers between ICF housing units:

> [Plaintiff] did not raise his allegation that he was not able to transfer to the "B Wing" of Unit 1, or that he felt the subsequent transfers to Units 2, 3, 4, and 5 were unconstitutional or unfavorable. Any cognizable claim arising from these allegations must be dismissed.

---

[8] Defendants are correct that an affidavit generated after plaintiff filed his complaint could not properly exhaust plaintiff's claims. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

(Def. Brief, 13, PageID.85). Plaintiff states that he never alleged that his transfers between housing units were unconstitutional. (Plf. Brief, 7, PageID.349). No claim based on transfers between housing units survived initial screening. If such a claim had survived, it would now be deemed abandoned. It is not necessary to address the exhaustion of claims that are not at issue in this lawsuit.

    C.    <u>Personal Hygiene Items</u>

Defendants' motion for summary judgment should be denied on plaintiff's claims that defendants violated his Eighth Amendment rights during his confinement in ICF's Unit Three by not providing him free toothpaste, shampoo, and deodorant. Plaintiff exhausted those claims through his July 2, 2018, kite. (ECF No. 24-1, PageID.361-62)

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Court grant defendants' motion for partial summary judgment (ECF No. 20) in part and deny it in part.  The Court should grant defendants' motion on plaintiff's claims under the Fourteenth Amendment's Equal Protection Clause based on elimination of the START program and deny defendants' motion on all other claims.

Dated:   August 12, 2019                              /s/  Phillip J. Green                       
                                                                  PHILLIP J. GREEN
                                                                  United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a forfeiture of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Berksire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).