UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A<small>DE</small> B<small>ROWN</small> #884273,

    Plaintiff,                                  Hon. Paul L. Maloney

v.                                               Case No. 1:18-cv-812

S<small>ABRINA</small> D<small>AVIS</small>, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 75) and Plaintiff's Motion for Summary Judgment (ECF No. 77). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted, Plaintiff's motion be denied, and this action terminated.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility, but the events giving rise to this action occurred while Plaintiff was incarcerated at the Ionia Correctional Facility (ICF). Plaintiff has sued the following ICF officials: Former Warden Willie Smith; Warden John Davids; former Deputy Warden Unknown Schiebner; Deputy Wardens Unknown Sandborn and Gary Miniard; Inspector Unknown Barber; Assistant Warden John Christiansen; Psychologist David Maranka; and Resident Unit Manager (RUM) Sabrina

Davis.[1]  The following allegations are contained in Plaintiff's complaint.

On March 18, 2016, Plaintiff was confined to administrative segregation and housed in Unit 1, A Wing. The windows in A Wing were kept closed, but the heating and cooling system nevertheless worked properly and Plaintiff was never exposed to extreme temperatures. In July or August 2017, Plaintiff was moved to Unit 2 where the windows remained closed and the heating/ventilation ducts did not function properly. As a result, the unit suffered extreme cold in the winter and extreme heat in the summer. In addition, the ventilation system in Unit 2 was so noisy that it caused Plaintiff to experience ear pain, hearing loss, sleep loss, mental destabilization, and an inability to communicate with other prisoners. After being released to general population in October 2017, Plaintiff resided in Units, 3, 4, and 5, none of which had properly working ventilation systems. As a result, Plaintiff experienced temperature extremes in both winter and summer.

In April 2018, Defendant Christiansen sealed every window at ICF, despite the ventilation problems within the facility. As a result, Plaintiff suffered extreme heat, which interfered with his breathing, leaving him unable to sleep, causing him severe headaches, and aggravating his depression. These conditions were exacerbated by the fact that Plaintiff, as a Level-V prisoner, was required to remain in his cell 23-24 hours daily. Prison officials also deployed large fans throughout the housing units that

---

[1] Plaintiff also sued MDOC Director Heidi Washington and the MDOC Director of Mental Health (Unknown Party #1), but Plaintiff's claims against these Defendants were dismissed on screening. (ECF No. 5).

provided no benefit because the air flow generated could not flow through the cell doors. Instead, constant noise produced by these fans prevented prisoners from communicating with each other and otherwise constituted torture. Despite complaining about this circumstance, prison officials continued to use these fans.

Defendant Davis refused to rectify the conditions described above. Davis also eliminated the Start Program, an incentive program for prisoners in the rehabilitation unit. Under the Start Program, prison officials were required to provide incentives to segregation prisoners, including access to journaling, telephones, store purchase of food, access to J-Pay and SecurePak, and prison jobs. Defendant Davis, as well as Defendants Miniard, Davids, and Maranka, informed Plaintiff that the unit prisoners were now considered general population prisoners and, therefore, ineligible to participate in the Start Program. Davis reassigned Plaintiff to general population, but denied him access to the privileges accorded other general population prisoners. Prison officials also denied Plaintiff basic hygiene items, such as deodorant, toothbrushes, toothpaste, and shampoo, despite his inability to purchase such items.

Plaintiff asserts that the insufficient ventilation and extreme temperatures he experiences violate his Eighth Amendment rights. Plaintiff alleges that the extreme noise generated by the ventilation fans deployed throughout the housing units violates his First and Eighth Amendment rights. Plaintiff alleges that the refusal by prison officials to provide him with free hygiene items violates his Eighth Amendment rights. Plaintiff alleges that his right to the equal protection of the laws was violated by his unequal treatment in the Start Program. Finally, Plaintiff alleges that his

3

constitutional rights were violated by the elimination of the Start Program.

Plaintiff's claims regarding the provision of free hygiene items, as well as his claims regarding the elimination of the Start Program, have been dismissed on exhaustion grounds. Thus, the only claims remaining in this matter are: (1) Eighth Amendment claims regarding insufficient ventilation and temperature extremes in the housing units; (2) First and Eighth Amendment claims regarding the excessive noise generated by the housing unit fans; and (3) Equal Protection claims regarding Plaintiff's participation in the Start Program. Defendants now move for summary judgment. Plaintiff likewise moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).

Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.  **Eighth Amendment Claims**

Plaintiff alleges that he was housed in conditions that violated his Eighth Amendment right to be free from cruel and unusual punishment.  Specifically, Plaintiff alleges that he experienced: (1) temperature extremes during winter and summer; (2) insufficient ventilation; and (3) excessive noise.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The analysis by which a defendant's conduct is evaluated consists of two-steps.  First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.  In this respect, Plaintiff "must show that he is

6

incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix*, 367 F.3d at 525. Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Ibid*. If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, whether the individual was deliberately indifferent to inmate health or safety. *Ibid*. The Eighth Amendment is not implicated, however, where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that a defendant acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

With respect to the objective element of the analysis, Plaintiff has presented sworn statements that he experienced the deprivations alleged. (ECF No. 77-7, 7-18, PageID.716-20, 787-91). Plaintiff has also presented affidavits executed by other prisoners. (ECF No. 77-11, 77-12, 77-13, PageID.769, 771, 773; ECF No. 80, PageID.929-31). While none of these other prisoners provide evidence regarding Plaintiff's circumstance, their assertions nevertheless generally support Plaintiff's

7

allegations regarding the conditions he experienced.

Even if the Court assumes that this evidence is sufficient to satisfy the objective prong of the analysis, Plaintiff's claims fail because he has presented no evidence establishing that any of the Defendants were subjectively aware of the conditions he was experiencing. Plaintiff asserts that "all defendants" knew of the conditions he was experiencing. (ECF No. 77-8, PageID.721). But, this is simply a conclusion, unsubstantiated and unsupported by any specific facts or evidence. Simply put, Plaintiff has provided no evidence establishing that any of the remaining Defendants were subjectively aware of the risk he was experiencing and failed to reasonably respond thereto. Accordingly, with respect to Plaintiff's Eighth Amendment claims, the undersigned recommends that Plaintiff's motion be denied and Defendants' motion be granted.

## II.     First Amendment Claim

Plaintiff asserts that the excessive noise generated by the housing unit fans impaired his ability to communicate with other inmates, thereby violating his First Amendment rights. Specifically, Plaintiff asserts that the noise generated by the housing unit fans prevented him from speaking to other inmates located in adjacent cells. Plaintiff's claim fails for several reasons.

First, the First Amendment does not afford to prisoners an absolute right to communicate with other prisoners. *See, e.g., Bear v. Kautzky*, 305 F.3d 802, 805 (8th Cir. 2002). Moreover, even if it is assumed that Plaintiff does enjoy a First Amendment right to communicate with other prisoners, Plaintiff has presented no evidence that such

8

right was impaired. Other than simply asserting that the fans were too loud, Plaintiff has presented no evidence that the fans in question prevented him from speaking with or otherwise communicating with inmates in adjacent cells.

Even if the Court assumes that Plaintiff's First Amendment rights were infringed, the result is the same. As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Nevertheless, the fact that "prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Wolfish*, 441 U.S. at 545.

Operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85. Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also, Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

9

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed

evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

With respect to which party bears the burden concerning the *Turner* analysis, the Supreme Court has held that "[t]he burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This statement clearly places on the prisoner the burden as to the last three *Turner* factors, but says nothing as to which party bears the burden as to the initial factor. As subsequent courts have concluded, the burden to articulate the rationale for a challenged action must rest with prison officials. As the Sixth Circuit observed:

> We note that while the burden is on the prisoner to disprove the validity of the regulation at issue . . . Defendants must still articulate their interest in the regulation . . . Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue.

*Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005) (internal citations omitted); *see also*, *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) ("the prison has the burden of demonstrating the First *Turner* Factor"). Accordingly, the Court concludes that, with respect to the *Turner* factors, Defendants bear the initial burden to

articulate a valid, rational connection between the challenged action and the legitimate governmental interest which motivated such. This burden is "slight, and in certain instances, the connection may be a matter of common sense." *Johnson*, 669 F.3d at 156.

Defendants have presented evidence that the housing unit fans were utilized to increase air circulation and regulate temperatures. (ECF No. 77-16, 77-17 at PageID.780, 783). Thus, Defendants satisfy their burden as to the first *Turner* factor. With respect to the remaining *Turner* factors, Plaintiff has failed to present evidence advancing his position. Specifically, Plaintiff has presented no evidence that he was unable to communicate with other prisoners via methods other than speaking from cell-to-cell. Plaintiff has likewise presented no evidence that there exists an alternative method of communication, not already available, which would accommodate his rights with only de minimis interference with the need to properly regulate the environment in the housing units. Accordingly, with respect to Plaintiff's First Amendment claims, the undersigned recommends that Plaintiff's motion be denied and Defendants' motion be granted.

### III. Equal Protection Claim

In 2018, the MDOC announced the formation of a pilot program, Start Units, designed to offer "alternative placement" in a "structured environment" for "eligible prisoners who would otherwise be classified to Administrative Segregation." (ECF No. 77-1,PageID.700-01). This initiative was designed to enable participating prisoners the opportunity, through demonstration of "positive behavior and program participation," to enjoy greater privileges and services while also reintegrating with the

general prison population.  (ECF No. 77, PageID.700-14, 830, 868-69).  Plaintiff alleges that Defendants have modified the rules of the Start Units in a manner that violates his right to equal protection of the laws.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To establish an equal protection claim, Plaintiff must establish "that the government treated [him] disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."  *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

While Plaintiff has made clear his dissatisfaction with the manner in which the Start Units program is being administered, he has failed to present evidence demonstrating that his equal protection rights have been violated.  Specifically, Plaintiff has presented no evidence that he was treated differently from any similarly situated prisoners or that any such disparate treatment was unlawful.  Accordingly, with respect to Plaintiff's equal protection claims, the undersigned recommends that Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 75) be granted; Plaintiff's Motion for Summary Judgment (ECF No. 77) be denied; and this action terminated. For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: November 12, 2020            /s/ Phillip J. Green
                                    PHILLIP J. GREEN
                                    United States Magistrate Judge